**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ : | | |
| J.T., ET AL., | : | |
| | : | **Civ. No. 09-4969 (MAH)** |
| Plaintiffs, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| DUMONT PUBLIC SCHOOLS, ET AL., | : | |
| | : | |
| Defendants. | : | |
| _____ : | | |

**HAMMER,** United States Magistrate Judge.

## I. INTRODUCTION

This case is a putative class-action lawsuit against the Dumont Public School System, the Dumont Board of Education and its members, and other Dumont public school officials (collectively, "Defendants" or "Dumont"), arising out of the placement of special education kindergarten students. This case was brought by J.T. on behalf of her minor child A.T. and all others similarly situated. Plaintiffs allege violations of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 *et seq.*, arising from "systematic discrimination in the placement of kindergarteners who require special education services." (Am. Compl. at 1-2, ECF No. 36.)

This matter is now before the Court on cross-motions by Plaintiffs and Defendants directed to the issue of whether Plaintiffs have standing to assert their claims, and whether

Plaintiffs have exhausted their administrative remedies with respect to all but their NJLAD

claim.  The Court has considered all of the briefing submitted in connection with the cross-

motions, including the reply and sur-reply relating to Plaintiffs' motion to strike, and the *amicus*

*curiae* brief submitted by the Education Law Center.[1]  For the reasons set forth below, the Court

will grant Defendants' motion for summary judgment on Plaintiffs' IDEA and Rehabilitation Act

claims, dismiss Plaintiffs' NJLAD claim without prejudice for lack of subject matter jurisdiction,

and deny Plaintiffs' motions to strike certain defenses and for partial judgment on the pleadings.[2]

---

[1] Specifically, the Court has considered the following:  Defs.' Mot. For Summary
Judgment ("Summ. J."), Sept. 28, 2011 [ECF No. 197]; Pls.' Mot. to Strike Certain Defenses and
Allegations and for Partial J. on the Pleadings ("Mot. to Strike"), Sept. 28, 2011 [ECF No. 198];
Defs.' Opp'n to Mot. to Strike, Sept. 29, 2011 [ECF No. 199]; Pls.' Opp'n to Mot. For Summ. J.,
Sept. 30, 2011 [ECF No. 201]; Pls.' Mot. for Leave to File a Br. in Further Support of Mot. to
Strike, Sept. 30, 2011 [ECF No. 202]; Pls.' Reply in Further Support of Pls.' Mot. to Strike, Sept.
30, 2011 [ECF No. 203]; Defs.' Letter in Response to Pls.' Motion for Leave to File a Br. in
Further Support of Mot. to Strike, Sept. 30, 2011 [ECF No. 204]; Rue Letter, Oct. 3, 2011 [ECF
No. 205]; Harrison Letter, Oct. 3, 2011 [ECF No. 206]; Harrison Letter responding to Oct. 3,
2011 Rue Letter, Oct. 3, 3011 [ECF No. 207]; Education Law Center's ("ELC") Mot. For Leave
to File Amicus Curiae Br., Oct. 4, 2011 [ECF No. 208]; ELC's Br. in Opp'n to Defs.' Mot. For
Summ. J., Oct. 4, 2011 [ECF No. 208-2]; Defs.' Response to ELC's Mot. For Leave to File
*Amicus Curiae* Br., Oct. 4, 2011 [ECF No. 209]; Rue Letter responding to Defs.' Response to
ELC's Mot., Oct. 4, 2011 [ECF No. 210]; Rue Letter, Nov. 3, 2011 [ECF No. 211].  Harrison
Letter in Response to Rue Letter, Nov. 7, 2011 [ECF No. 213].  Additionally, the parties had
extensive oral argument before United States District Judge Faith S. Hochberg on June 8, 2011.
Tr. of June 8, 2011 Oral Arg., Sept. 29, 2011 [ECF No. 200].

[2] Plaintiffs move under Fed. R. Civ. P. 12(f) to strike the defenses of lack of standing and
mootness.  Plaintiffs also seek partial judgment on the pleadings pursuant to Fed. R. Civ. P.
12(c), arguing that J.T.'s standing is "plain on the face of the pleadings[.]"  Mot. to Strike at 1,
ECF No. 198-3.  The issues and arguments raised in Plaintiffs' motions closely resemble those
advanced in Defendants' summary judgment motion.  Because the Court determines that
Plaintiffs lack standing and grants Defendants' motion for summary judgment, it need not
separately address Plaintiffs' motion under Rule 12(f) or Rule 12(c).

## II. <u>BACKGROUND</u>

### A.     **Factual History**

Plaintiff J.T. is the mother of Plaintiff A.T. as well as A.T.'s twin brother, non-party C.T.

Both children require special education services.  In fall 2009, A.T. and C.T. entered

kindergarten.  (Defs.' L. Civ. R. 56.1 Statement of Facts ¶¶ 5-6, ECF No. 197-1; Plaintiffs'

Responsive Statement of Material Facts ¶¶ 5-6, ECF No. 201-1.)

The Borough of Dumont in New Jersey has four public elementary schools that offer

kindergarten classes: Selzer, Grant, Honiss, and Lincoln.  (Am. Compl. ¶ 36, ECF No. 36.)

Normally, a child attends the school closest to his or her home, that is, their local neighborhood

school.  Each year, however, Dumont picks one of those four schools, based on the demographics

of the town, to host a kindergarten class the parties refer to as the "inclusion class."  (Am.

Compl. ¶ 37, ECF No. 36; Defs' L. Civ. R. 56.1 Statement of Facts ¶ 31, ECF No. 197-1;

Wilhelm Aff. Ex. 1, Barbato Dep. at 170:13-25, 171:1-4, ECF No. 201-7.)  Children placed in

the inclusion class attend the host school, regardless of whether it is their local neighborhood

school.  (Wilhelm Aff. Ex. 1, Barbato Dep. at 170:13-25, 171:1-10, ECF No. 201-7.)

The inclusion class contains both kindergarteners who need special education services

and those who do not.  (Am. Compl. ¶ 37, ECF No. 36; Defs.' L. Civ. R. 56.1 Statement of Facts

¶ 1, ECF No. 197-1.)  The same kindergarten curriculum is used in all of the Dumont

kindergarten classes, but the inclusion class has additional services and support provided to the

special education students.  (Summ. J. at 1, ECF 197-2.)  The parties dispute whether the

inclusion class constitutes a "regular education kindergarten class" or is more restrictive.  (Pls.'

Supplemental Statement of Disputed Facts ¶ 10, ECF No. 201-1.)  In recent years, approximately

25% of the children in the inclusion class have required special education services.  (Rue Letter Ex. B, Barbato Dep. at 210:5-211:7, 176:8-177:3, 178:3-13.)  For comparison purposes, during the 2008-2009 school year, approximately 20% of all kindergarteners within Dumont, and approximately 15% of all children within New Jersey, required special education services.  (Am. Compl. ¶ 38, ECF No. 36.)

Plaintiffs allege that Dumont improperly applies a  "blanket rule" by placing special education kindergarteners in the inclusion class regardless of whether their neighborhood school hosts it.  (Am. Compl. ¶ 41, ECF No. 36; Pls.' Supplemental Statement of Disputed Material Facts ¶ 9, 20, ECF No 201-1.)  According to Plaintiffs, Dumont applied this blanket rule by placing A.T. in the inclusion class at the Grant School in September 2009, instead of a regular classroom in his local neighborhood school, Selzer.  (Am. Compl. ¶¶ 44, 46, ECF No. 36.)

Pursuant to the IDEA, Dumont held regular meetings to prepare individualized education programs ("IEP") for A.T. and C.T., before they began kindergarten.[3]  (Harrison Aff. Ex. 1 at 3-4, 7-8, Ex. 2 at 4-6, ECF No. 197-4.)  On May 21, 2009, J.T. attended IEP meetings to discuss 2009-2010 kindergarten placements for A.T. and C.T.  (Harrison Aff. Ex. 1 at 7-8, ECF No. 197-4.)  The IEP prepared for A.T. called for A.T. to be placed in the inclusion class, which for the 2009-2010 school year was to be hosted at the Grant School.  (Am. Compl. ¶ 44, ECF No. 36.)  The IEP prepared for C.T. called for C.T. to be placed in a private school outside of Dumont.

_____

[3] Plaintiffs do not allege in this litigation that they were deprived of their participation rights.  (Tr. of Oral Arg. at 15:20-15:25; 39:19-40:14, June 8, 2011, ECF No. 200-1.)  Similarly, Plaintiffs neither challenge A.T.'s placement nor seek to change his IEP.  (*Id.* at 18:16-18:23.)  Plaintiffs do not allege that A.T. suffered an individual denial of an educational benefit.  (*Id.*)  Plaintiffs' contention is that after the IEP was created, "the people in that room did not have the authority to consider providing those services anywhere but in a particular location[,]" i.e., the inclusion class at the designated elementary school.  (*Id.* at 40:12-40:14.)

The neighborhood school for both A.T. and C.T. was the Selzer School, which was approximately two miles away from Grant.  (Am. Compl. ¶ 44, ECF No. 36; Defs.' L. Civ. R. 56.1 Statement of Facts ¶ 2; ECF No. 197-1.)

J.T. objected to the IEPs for both A.T. and C.T. and filed due process petitions challenging both IEPs.  (Harrison Aff. ¶¶ 2-3, ECF No. 197-3.)  The petition challenging A.T.'s IEP claimed that Dumont had violated the IDEA by failing to consider A.T.'s individual needs and by not offering him a free and appropriate public education ("FAPE") in the least restrictive environment – i.e., in his neighborhood school.  (Harrison Aff. Ex. 1 at 2, 7, 12, 15, 16, ECF No. 197-4.)  A.T.'s petition sought to have him placed in a regular education class at Selzer with supplemental supporting services.  (Harrison Aff. Ex. 1 at 2, 19, ECF No. 197-4.)

It is undisputed that Plaintiffs voluntarily withdrew both petitions on or about November 17, 2009, approximately six weeks after commencing this action.[4]  (Harrison Aff. ¶ 9, ECF No. 197-3; Harrison Aff. Ex. 8, ECF No. 197-6.)

### B.    Procedural History

On September 28, 2009, Plaintiffs filed the Complaint in this matter.  On April 16, 2010,

---

[4] The parties attempted to settle the petitions but were unsuccessful.  (Barbato Aff. ¶¶ 3-17, ECF No. 197-7.)  Defendants contend that, during the administrative process initiated by the petitions, Defendants offered to place A.T. at Selzer, as Plaintiffs demanded in the due process petition.  (*Id.* ¶ 13, ECF No. 197-7; Summ. J. at 15, ECF No. 197-2.)  Defendants further contend that J.T. declined their offer to place A.T. at Selzer and instead accepted A.T.'s placement at Grant.  (Barbato Aff. ¶ 18, ECF No. 197-7.)  In support of this contention, Defendants rely on a series of emails between J.T. and Dr. Paul Barbato, the director of special education services for Dumont.  Plaintiffs contend the communications are inadmissible under Fed. R. Evid. 408, because they are communications relating to settlement negotiations.  (Defs.' L. Civ. R. 56.1 Statement of Facts ¶¶ 8, 11-19, 28, 29, ECF No. 197-1; Pls' L. Civ. R. 56.1 Responsive Statement of Facts ¶¶ 8, 11-19, 28, 29, ECF No. 201-1.)  For the reasons discussed *infra*, the Court does not need to resolve this issue, or to consider the contested communications to resolve the pending cross-motions.

Plaintiffs filed an "Amended Class Action Complaint," alleging violations of: (1) the IDEA and its implementing regulations at 34 C.F.R. § 300.1 *et seq.*, and N.J. Admin. Code § 6A:14.1-1 *et seq.*; (2) Section 504 of the Rehabilitation Act; and (3) NJLAD.  (Am. Compl. ¶¶ 49, 51, 53, ECF No. 36.)  Plaintiffs seek injunctive relief, including an order requiring Defendants, where possible, to educate special education kindergarteners in regular education classrooms located in their neighborhood schools, with a student ratio of those who do and do not require special education services that "reflects a natural proportion between these two groups in the district as a whole." (*Id.* at 19-20, ECF No. 36.)  Plaintiffs also seek injunctive relief ordering Dumont to *inter alia*: (1) submit each IEP to a special master paid for by Dumont for pre-approval; (2) hire an inclusion facilitator to train staff; (3) hire enough special education staff to allow the placement of all children requiring special education in their neighborhood schools.  (*Id.* at 20-21, ECF No. 36.)  Finally, the Amended Complaint seeks attorneys' fees.  (*Id.* at 21, ECF No. 36.)

After the parties conducted discovery directed to the issue of Plaintiffs' standing to bring this action, Defendants moved for summary judgment and Plaintiffs moved to strike certain defenses and allegations in Defendants' answer and for partial judgment on the pleadings. United States District Judge Faith S. Hochberg heard oral argument on the motions on June 8, 2011.[5]

_____

[5] On July 13, 2011, while the motions were pending, Judge Hochberg held a settlement conference in this case.  (Order, Sept. 16, 2011, ECF No. 194.)  Because any trial of this matter would be a bench trial, the parties consented to conduct all further proceedings before the Undersigned, pursuant to 28 U.S.C. § 636(c).  (Consent and Reference Order, Sept. 16, 2011, ECF No. 193; Order, Sept. 16, 2011, ECF No. 194.)  Plaintiffs refiled their Motion to Strike on September 28, 2011.  (Mot. to Strike, ECF No. 198.)  Defendants refiled their Motion for
(continued...)

### III.  OVERVIEW OF THE PARTIES' ARGUMENTS

The parties dispute: (1) whether Plaintiffs have standing; (2) whether the IDEA and the Rehabilitation Act require Plaintiffs to exhaust their administrative remedies before resorting to this Court; and (3) whether Plaintiffs' claims under the Rehabilitation Act and the NJLAD survive if Defendants' motion for summary judgment is granted.

#### A.      Plaintiffs' Arguments

Plaintiffs advance two different theories to establish standing.  Plaintiffs' primary theory is that Dumont systematically failed to give individual consideration to kindergarten placements. Specifically, Plaintiffs claim that Dumont systematically places kindergarteners who require special education in the inclusion class at the designated elementary school without considering a similar placement in each student's neighborhood school.  Plaintiffs further allege that this policy does not place students in the least restrictive environment.  (Opp'n to Summ. J. at 17-19, ECF No. 201.)  Plaintiffs contend that this practice constitutes a procedural violation of the IDEA causing injury sufficient to provide Plaintiffs with constitutional standing.  (Mot. to Strike at 3, ECF No. 198-3.)  Notably, the Amended Complaint "alleges only that the process by which Dumont determines special education kindergarten placements does not comply with the IDEA," while "leaving open the question of whether the resulting individual placements are in fact appropriate."  (Opp'n to Summ. J. at 5-6, ECF No. 201.)  Plaintiffs also state that whether Dumont provided a FAPE or provided it in the least restrictive environment as to any particular kindergarten student, including A.T., "is not relevant to this action."  (*Id.* at 1, ECF No. 201.)

---

[5](...continued)
Summary Judgment on September 28, 2011.  (Summ. J., ECF No. 197.)

Plaintiffs' second standing argument, which is inconsistent with its first argument, alleges that Defendants deprived A.T. of an educational benefit by failing to individually consider his ability to be educated in the least restrictive environment possible.  (*Id.* at 1 n.2, ECF No. 201.) Plaintiffs contend that the least restrictive environment for A.T. would have been a regular classroom in his neighborhood school, with such support services as necessary.[6]  (Reply at 1, ECF No. 203).

Plaintiffs also argue that they should not be required to exhaust their administrative remedies in this case because (i) the New Jersey Office of Administrative Law ("OAL") is not empowered to grant relief for systemic violations (Opp'n to Summ. J. at 4, ECF No. 201); (ii) the OAL is not institutionally competent to resolve this type of dispute (*Id.* at 7, ECF No. 201); (iii) J.T.'s claims are transient and likely to escape judicial review if exhaustion is required (*Id.* at 9,

---

[6] That Plaintiffs present this theory in their briefs is confusing, particularly since those same briefs appear to disavow that theory.  (Opp'n to Summ. J. at 5-6, 18-19, ECF No. 201 ("Plaintiffs do not complain of or seek a ruling regarding the appropriateness of the placement of any individual student. . . . The Amended Complaint alleges only that the process by which Dumont determines kindergarten special education placements does not comply with the IDEA (leaving open the question of whether the resulting individual placements are in fact appropriate).")) (footnote and citations omitted).

Perhaps recognizing that their second theory is in significant tension with their primary theory, or that their second theory raises exhaustion issues, Plaintiffs disclaimed their second theory at oral argument.  (Tr. of Oral Arg. at 16:23-16:25, ECF No. 200-1 (Plaintiffs' counsel stating "Our claims are not based on any – on allegations of individual harms.  That's correct, Your Honor."); *id.* at 18:15-18:23 (Plaintiffs' counsel confirming, in response to Court's question, that Plaintiffs are not alleging "A.T. has suffered an individual denial of an educational benefit"); *id.* at 19:7-19:12 (Plaintiffs' counsel stating "Did A.T. suffer a loss of an individual educational benefit, I believe that there is a benefit to a process that considers the individual child.  And the allegations are that that process was . . . deficient.  A.T. and those who are similarly situated did not receive a proper process"); *id.* at 20:3-20:6 (Plaintiffs' counsel confirming, in response to Court's question, that "for the purposes of standing, their only personal grievance is a process grievance").)

ECF No. 201); (iv) exhaustion in this case would be futile because an Administrative Law Judge's expertise is not needed in this case and discovery creating a detailed factual record has been completed (*Id.* at 11-14, ECF No. 201); and (v) the Court should consider the equities in this case and excuse exhaustion.[7]  (*Id.* at 14, ECF No. 201.)  Plaintiffs also claim that, even if the Court grants Dumont's motion to dismiss their IDEA claims for failure to exhaust administrative remedies, their Rehabilitation Act and NJLAD claims should survive.  (*Id.* at 16, ECF No. 201.)

### B.    Defendants' Arguments

Defendants argue that this action should be dismissed for lack of standing under either of Plaintiffs' standing theories.  According to Defendants, Plaintiffs' first standing theory fails because of "[P]laintiffs' failure to allege a cognizable injury under the IDEA."  (Harrison Letter at 2, ECF No. 204; Summ. J. at 16, ECF No. 197-2.)  Defendants argue that Plaintiffs' second standing theory fails because (i) Plaintiffs accepted the placement they now contest; and (ii) Plaintiffs failed to exhaust the administrative remedies available to them under the IDEA and, in this case, exhaustion should not be excused.  (Harrison Letter at 2, ECF No. 204.)

---

[7] Plaintiffs concede that this argument is foreclosed by Third Circuit precedent which requires plaintiffs to exhaust administrative remedies unless one of the recognized exceptions to exhaustion applies.  *See W.B. v. Matula*, 67 F.3d 484, 493 (3d Cir. 1995), *abrogated on other grounds by A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791 (3d Cir. 2007); *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994).  Plaintiffs assert this argument solely "to preserve plaintiffs' right to argue on appeal, if necessary, that exceptions to the doctrine of administrative exhaustion are inherently equitable and that . . . excuse from the exhaustion requirement in the IDEA is a waivable affirmative defense . . . which should be adopted by the Third Circuit."  (Opp'n to Summ. J. at 14 n.15, ECF No. 201.)

9

## IV.  STANDARDS FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c), a motion for summary judgment will be granted "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

(1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material if it might affect

the outcome of the case, and an issue is genuine "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Doe v. Abington*

*Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007).  All facts and inferences must be construed "in

the light most favorable to the nonmoving party."  *Peters v. Del. River Port Auth. of Pa. & N.J.*,

16 F.3d 1346, 1349 (3d Cir. 1994).   Where the non-moving party bears the burden of proof on

an issue, "the burden on the moving party may be discharged by 'showing' – that is, pointing out

to the district court – that there is an absence of evidence to support the nonmoving party's case."

 *Celotex Corp.*, 477 U.S. at 325.

The party seeking summary judgment must initially provide the Court with the basis for

its motion.  *Celotex Corp.*, 477 U.S. at 323.  This requires the moving party to either establish

that there is no genuine issue of material fact and that the moving party must prevail as a matter

of law, or demonstrate that the non-moving party has not shown the requisite facts relating to an

essential element of an issue on which it bears the burden.  *Id.* at 322-23.  Once the party seeking

summary judgment has carried this initial burden, the burden shifts to the non-moving party.

*Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).

To avoid summary judgment, where the non-moving party will bear the burden of proof

at trial on a dispositive issue, he or she must demonstrate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324.  The opposing party must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 587 (internal quotations and citation omitted).  In addition, summary judgment may be granted if the nonmoving party's "evidence is merely colorable, or is not significantly probative." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## V. <u>DISCUSSION</u>

### A.   IDEA

The primary purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs."  20 U.S.C. § 1400(d)(1).  The Supreme Court has interpreted the FAPE provision to mean that schools in states that receive federal funding must provide "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 203 (1982).  The Third Circuit has further interpreted this provision to require the educational program to provide special education students with meaningful educational benefits. *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 184 (3d Cir. 1988).

The IDEA provides funding to states to help meet their educational needs. *Honig v. Doe*,

484 U.S. 305, 310 (1988).  To qualify for financial assistance, states must comply "with the

IDEA's extensive substantive and procedural requirements."  *Hoeft v. Tucson Unified Sch. Dist.*,

967 F.2d 1298, 1300 (9th Cir. 1992).  "By providing a host of procedural safeguards, Congress

intended to promote [the Act's] purpose" of providing a FAPE.  *Engwiller v. Pine Plains Cent.*

*Sch. Dist.*, 110 F. Supp. 2d 236, 247 (S.D.N.Y. 2000).  The IDEA's procedural safeguards are

also meant to ensure attainment of its substantive goals.  *Rowley*, 458 U.S. at 205-206.

One substantive requirement of the IDEA is to educate special education students in the

least restrictive environment.  *Murray v. Montrose Cnty. Sch. Dist. RE-IJ*, 51 F.3d 921, 926 (10th

Cir. 1995) (quotations omitted).  States must establish "procedures to ensure that . . . [t]o the

maximum extent appropriate, children with disabilities . . . are educated with children who are

not disabled . . . ."  20 U.S.C. § 1412(a).  Children with disabilities may be removed from the

"regular educational environment . . . only when the nature and severity of the disability of a

child is such that education in regular classes with the use of supplementary aids and services

cannot be achieved satisfactorily."  *Id.*; *see Oberti v. Bd. of Educ. of Borough of Clementon Sch.*

*Dist.*, 995 F.2d 1204, 1213-14 (3d Cir. 1993).  The New Jersey State regulations include a similar

directive to educate classified children alongside their non-disabled peers in the least restrictive

environment.  *See* N.J. Admin. Code § 6A:14-4.2.

School districts implement a FAPE by designing an IEP for each special education

student.  20 U.S.C. § 1414(d).  The IEP has been described as "the 'centerpiece' of the IDEA's

system for delivering education to disabled children."  *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d

553, 557 (3d Cir. 2010) (quoting *Polk*, 853 F.2d at 173).  State educational authorities are

required to "identify and evaluate disabled children, § 1414(a)-(c), develop an IEP for each one,

§ 1414(d)(2), and review every IEP at least once a year, § 1414(d)(4)." *Schaffer v. Weast*, 546 U.S. 49, 53 (2005).  The IEP must be "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." *D.S.*, 602 F.3d at 557 (quotations and citations omitted).

Parents play a critical role in formulating the IEP along with the other members of IEP team.  20 U.S.C. § 1414(d)(1)(B); *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 524 (2007).  Parents are entitled to participate in the IEP meetings and must be given notice by the school of any changes to their child's intended educational program.  20 U.S.C. § 1415(b).  The "process culminates in the formulation of an [IEP], tailored to the child's unique needs." *Hoeft*, 967 F.2d at 1300.  The IDEA enables parents "to act as advocates for their children at every stage of the administrative process." *Maroni v. Pemi-Baker Reg'l Sch. Dist.*, 346 F.3d 247, 256 (1st Cir. 2003).

The IDEA's procedural safeguards also include the right to present a complaint regarding a child's educational plan in a due process hearing.  20 U.S.C. § 1415(b)(6), (f).  Any party dissatisfied with the outcome of the due process hearing may bring a civil action in any State or district court.  *Id.* § 1415(i)(2)(A).  "However, it is clear from the language of the Act that Congress intended plaintiffs to complete the administrative process before resorting to federal court." *Komninos,* 13 F.3d at 778.  Requiring exhaustion of the administrative process before allowing claims to be brought in federal district court "encourages parents and the local school district to work together to formulate an individualized plan for a child's education, and allows the education agencies to apply their expertise and correct their own mistakes." *Woodruff v. Hamilton Twp. Pub. Sch.*, 305 F. App'x. 833, 837 (3d Cir. 2009).  "A plaintiff bears the burden

of establishing the harm caused by the claimed procedural shortcomings . . . ." *C.M. v. Bd. of Educ. of Union Cnty. Reg'l High Sch. Dist.*, 128 F. App'x 876, 881 (3d Cir. 2005).

### B.     Standing

The parties' cross-motions first require the Court to determine whether Plaintiffs have standing to bring this action.  "If plaintiffs do not possess Article III standing . . . the District Court . . . lack[s] subject matter jurisdiction to address the merits of plaintiffs' case." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (citation omitted).

"Standing is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 117 (3d Cir. 1997).  If Plaintiffs do not possess Article III standing, this Court lacks subject matter jurisdiction to hear the merits of Plaintiffs' claim. *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).  The plaintiff must establish standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at successive stages of the litigation." *ACLU-NJ v. Twp. of Wall*, 246 F.3d 258, 261 (3d Cir. 2001) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (internal quotation marks omitted).  Even if the parties fail to raise the issue of standing, "[t]he federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'"  *United States v. Hays*, 515 U.S. 737, 742 (1995) (*quoting FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990) (alteration in *Hays*)).  "Moreover, if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member

14

of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).The doctrine of standing requires, at the outset of the litigation, a plaintiff to demonstrate that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61).

In considering whether Plaintiffs have standing to bring this action, the central question is whether an alleged procedural violation, without more, constitutes injury in fact where Plaintiffs do not allege: (1) a loss of an educational opportunity for the student; (2) a serious deprivation of the parents' rights to participate in the formulation of the IEP; or (3) a deprivation of an educational benefit.[8]  Plaintiffs' primary theory of standing is that Dumont failed to give

---

[8] Plaintiffs cast the violations as procedural.  (Mot. to Strike at 3, ECF No. 198-3).  To the extent Plaintiffs alleged substantive violations, they abandoned that theory, perhaps recognizing that they would be required to exhaust their administrative remedies before seeking relief in this Court.  *See supra* Part III.A. note 6; *see infra* Part V.C.  Nonetheless, serious doubts exists as to whether Plaintiffs' allegations amount to a procedural violation at all.

The IDEA's procedural requirements ensure the realization of substantive requirements, but they do not necessarily implicate each other.  *See, e.g.*, *D.S.*, 602 F.3d at 565 ("The content of an IEP as such does not implicate the IDEA's procedural requirements for content is concerned with the IEP's substance, i.e., whether the IEP 'reasonably [is] calculated to enable the child to receive educational benefits.'") (quoting *Rowley*, 458 U.S. at 207).  One "substantive" requirement of the IDEA is to educate students in the least restrictive environment to the maximum extent appropriate given the nature and severity of their disabilities.  *Oberti*, 995 F.2d at 1213.  The Third Circuit has noted, however, the "apparent tension" between this requirement and another substantive requirement, that is, to provide a uniquely appropriate individualized education.  *Id.* at 1214 & n.18.

Here, Plaintiffs claim that "J.T.'s standing is shown by the evidence plaintiffs proffer that
(continued...)

individual consideration to kindergarten placements by not considering whether each

kindergarten student requiring special education services could be educated in his or her

neighborhood school, as opposed to the inclusion class at the designated elementary school.

      The Third Circuit has held that "[a] procedural violation is actionable under the IDEA

only if it results in a loss of educational opportunity for the student, seriously deprives parents of

their participation rights, or causes a deprivation of educational benefits." *D.S.*, 602 F.3d at 565

(citing *Winkelman*, 550 U.S. at 525-526 (quoting 20 U.S.C. § 1415(f)(3)(E))).[9]  Thus, "a school

---

[8](...continued)
Dumont failed to provide A.T. a placement [in] the least restrictive environment for 2009-2010."
(Opp'n to Summ. J. at 2, ECF No. 201.)  However, this type of injury – failure to place A.T. in
the least restrictive environment – is substantive in nature, not procedural.  Accordingly, the
fundamental implications of Plaintiffs' allegations will ultimately be individual, fact-intensive
inquiries as to whether each student is being educated in his or her own least restrictive
environment.  (*See* Opp'n to Summ. J. at 6 n.6, ECF No. 201 ("[I]f the allegations in the
Amended Complaint are true . . . , some children subject to the policies at issue here have
probably been appropriately placed, while others probably have not.").)  Thus, the Court strains
to see these violations as procedural.  Rather they appear to be substantive and "are precisely the
kinds of issues the IDEA mandates adjudication of in the first instance at a due process hearing."
*D.A. v. Pleasantville Sch. Dist.*, No. 07-4341, 2009 WL 972605, at *5 (D.N.J. Apr. 6, 2009).

      [9] Plaintiffs claim that §1415(f)(3)(E) is "irrelevant" in this case because, according to
Plaintiffs, that section "defines when a *hearing officer* may find that a denial of FAPE has
occurred in the context of an administrative hearing" and "[t]his case is not an administrative
hearing, and [P]laintiffs are not seeking relief from an administrative officer."  (Opp'n to Summ.
J. at 21, ECF No. 201 (emphasis in original).)  This argument is meritless.  Plaintiffs have come
directly to this Court for relief under the IDEA instead of exhausting their remedies through the
administrative process.  They now suggest that the Court need not follow the dictates of the
statute, specifically §1415(f)(3)(E).  However, Plaintiffs provide no legal support for this
proposition.

      Section 1415(f)(3)(E) states that:

      In matters alleging a procedural violation, a hearing officer may find that a child
      did not receive a [FAPE] only if the procedural inadequacies: (I) impeded the
      child's right to a [FAPE]; (II) significantly impeded the parents' opportunity to

                                         (continued...)

district's failure to comply with the procedural requirements of the Act will constitute a denial of a FAPE only if that failure causes substantive harm to the child or his parents." *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010).[10]  Thus, "not every procedural irregularity gives rise to liability under the IDEA.  Nevertheless, procedural inadequacies [that have]

---

[9](...continued)
participate in the decisionmaking process regarding the provision of a [FAPE] to the parents' child; or (III) caused a deprivation of educational benefits.

To resolve the question of "what consequences follow procedural violations," Congress included this provision in the IDEA when the statute was amended in 2004.  Jon Romberg, *The Means Justify the Ends: Structural Due Process in Special Education Law*, 48 Harv. J. on Legis. 415, 417 (2011).  The 2004 amendments codified the harmless error approach courts had been taking to address procedural violations.  *Id.* at 418 (explaining that Congress "simply adopt[ed] wholesale three sensible, if vague, principles articulated in court of appeals decisions that struggled to derive common threads from prior case law"); *see also* Perry A. Zirkel, *Case Law For Functional Behavior Assessments and Behavior Intervention Plans: An Empirical Analysis*, 35 Seattle U. L. Rev. 175, 203 n.172 (Fall 2011) (explaining that the courts "developed and consistently used a harmless error approach when analyzing procedural violations of the IDEA" and that Congress codified this approach in the 2004 amendments) (citing 20 U.S.C. § 1415(f)(3)(E)).  Thus, Plaintiffs' contention that this provision of the IDEA applies only to hearing officers in an administrative proceeding, not to the courts, does not comport with the caselaw or the statute's history.

[10] *C.H. v. Cape Henlopen School District* addressed the appropriate remedy for a procedural violation and the standard for determining when compensatory education or tuition reimbursement is available.  606 F.3d 59, 66 (3d Cir. 2010).  The Third Circuit noted that where plaintiffs fail to show the deprivation of a FAPE, they may seek only injunctive relief.  *Id.* However, the Third Circuit emphasized that a procedural violation of the IDEA is actionable "only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits."  *Id.* at 66-67.  In this case, Plaintiffs are not alleging that A.T. lost an educational opportunity, or that his parents were deprived of their participation rights, or that he was deprived educational benefits.  Plaintiffs only allege that a procedural violation occurred.  However, Plaintiffs' allegations of a procedural violation, with their express disclaimer that whether Dumont provided a FAPE is irrelevant (Opp'n to Summ. J. at 1, ECF 201), will not support standing.  "It is well established that plaintiffs must show injury or least an imminent threat of injury in order to maintain their standing in a federal court."  *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d at 117.

compromised the pupil's right to an appropriate education . . . or caused a deprivation of educational benefits are the stuff of successful IDEA actions." *Murphy v. Timberlane Reg'l Sch. Dist.*, 22 F.3d 1186, 1196 (1st Cir. 1994)*, cited with approval in Beth V. v. Carroll*, 87 F.3d 80, 86 (3d Cir. 1996).

*In D.S. v. Bayonne Bd. Of Education*, the plaintiffs claimed that the school board "ran afoul of the IDEA's procedural requirements" because it failed to timely respond to letters from D.S.'s parents requesting a meeting to discuss their son's IEP. 602 F.3d at 565. The Third Circuit held that "[a] procedural violation is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits." *Id.* The Court explained that "though it is important that a school district comply with the IDEA's procedural requirements, rather than being a goal in itself, such compliance primarily is significant because of the requirements' impact on students' and parents' substantive rights." *Id.* Thus, the Third Circuit found that the alleged procedural violations did not result in a deprivation of educational benefits. *Id.* at 566. The Third Circuit also noted that the parents "ultimately had an opportunity to participate meaningfully in the creation of an IEP for D.S. that was in effect for most of his ninth-grade year," even though they did not sign off on it. *Id.* at 565. Under the circumstances, the Third Circuit found that Bayonne "substantially satisfied the IDEA's procedural requirements and that any deficiency in its compliance with the requirements [was] not a basis for granting relief." *Id.* at 566.

The only alleged procedural violation here is that Dumont places special education kindergarteners in the inclusion class (which Plaintiffs argue is not equivalent to a regular class)

without first considering, on an individual basis, whether to duplicate those services in a regular

class in his or her neighborhood school.  However, Plaintiffs do not allege that Dumont failed to

assemble a proper IEP team to determine an appropriate placement for A.T.  Plaintiffs also do

not contend that Dumont deprived A.T.'s parents of their participation rights, and the record is

clear that J.T. attended A.T.'s IEP meeting and was afforded a meaningful opportunity to provide

input regarding the IEP.  *See supra* Part II.A. note 3.  Furthermore, Plaintiffs do not allege that

J.T. was deprived of her rights to an impartial due process hearing when she objected to A.T.'s

IEP and filed a due process petition.  Plaintiffs are also not claiming that A.T. suffered a

deprivation of educational benefits.  *See supra* Part III.A. note 6.  Thus, Plaintiffs have not

demonstrated either "a loss of educational opportunity for the student," or a serious deprivation

of the parents' "participation rights," or a "deprivation of educational benefits" as required under

*D.S.* to establish an actionable procedural violation of the IDEA.  *D.S.*, 602 F.3d at 565.

Plaintiffs rely on *Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171 (3d

Cir. 1988), in support of their position that Dumont applies an impermissible "blanket rule" that

places all classified kindergarten students in the inclusion class.[11]  (Mot. to Strike at

---

[11] To the extent that Plaintiffs rely on *Heldman v. Sobol*, 962 F.2d 148 (2d Cir. 1992) and
*Brandon A. v. Donahue*, No. 00-025-B, 2001 WL 920063 (D.N.H. Aug. 8, 2001), they are
distinguishable.

The procedural violations in *Heldman* and *Brandon A.* compromised the plaintiffs' rights
to an impartial due process hearing to challenge the appropriateness of their educational
programs.  In *Heldman*, the plaintiff challenged the process employed by New York for selecting
hearing officers who heard challenges to IEPs because, according to the plaintiff, the system
denied his son an impartial review of his IEP.  *Heldman*, 962 F.2d at 153.  The Second Circuit
concluded that the plaintiff had standing, despite the fact that the plaintiff's child was no longer
enrolled in the same school district and had no hearing pending.  *Id.* at 154-157.  The court found
that "[t]o ensure that the parents would not be silenced by the very forces that once excluded

(continued...)

---

[11](...continued)

disabled children from public education, Congress granted parents the right to seek review of their child's IEP." *Id.* at 151.  Accordingly, the court held that the Plaintiff had standing to challenge the state's procedures for selecting hearing officers who ultimately determined the appropriateness of disabled students' IEPs.  *Id.* at 155-56.

Similarly, in *Brandon A.*, Brandon's father requested a due process hearing to challenge the school district's refusal to provide Brandon with an extended school-year program in a therapeutic setting. *Brandon A.*, 2001 WL 920063, at *1.  Brandon's father also claimed that Brandon's IEP failed to properly address Brandon's emotional disability.  *Id.*  The court found that Brandon's complaint met Article III's standing requirements because it alleged that his right under the IDEA to a due process hearing and decision within forty-five days had been denied. The court found that denial of a timely hearing constituted a sufficient injury-in-fact.  *Id.* at *5.

In this case, Plaintiffs do not allege that they were denied a fair and impartial due process hearing.  To the contrary, Plaintiffs opted to withdraw the petitions.  Further, Plaintiffs have clearly stated that "whether Dumont in fact provided a [FAPE] . . . or provided it in the least restrictive environment as to any specific kindergarten student (even A.T.), is not relevant to this action."  (Opp'n to Summ. J. at 1, ECF No. 201.)  They allege only that a procedural violation occurred.

Plaintiffs also argue that the Court should look to the Eastern District of Pennsylvania's decision in *P.V. v. School District of Philadelphia*, No. 11-04027, 2011 WL 5127850 (E.D. Pa. Oct. 31, 2011), for guidance because the case is "factually similar" to the instant case.  (Rue Letter, Nov. 3, 2011, ECF No. 211.)  In *P.V.*, four autistic students brought an action against the School District of Philadelphia and other school officials seeking various forms of relief from what they referred to as an "automatic autism transfer policy."  *Id.* at *2.  The *P.V.* plaintiffs claimed that under the alleged policy, the district automatically transferred students from one school to another when they completed a particular grade, and that these transfers were made more frequently for students with autism than for non-disabled students.  *Id.* at *1.  The complaint alleged that this practice was "particularly problematic" for students with autism, because they "have difficulty transitioning from one environment to another."  *Id.*  The complaint also alleged that these transfers occurred "with little or no parental notice or involvement and without the required consideration of the children's individualized circumstances."  *Id.*  The court held that plaintiffs had standing because the students would be subject to the same automatic transfer policy from year to year, which made plaintiffs' injuries "imminent."  *Id.* at *11.

The *P.V.* case is distinguishable from this case for several reasons.  First, unlike the plaintiffs here, the plaintiffs in *P.V.* alleged more than that the school district had committed a procedural violation.  The *P.V.* plaintiffs showed that an imminent injury would result if they

(continued...)

20

14, ECF No. 198-3; Opp'n to Summ. J. at 17, 20, ECF No. 201.)  In *Polk*, the school district

denied the student direct "hands on" physical therapy, which his parents claimed he required, and

provided "consultative" physical therapy instead.  *Id.* at 174.  After exhausting administrative

remedies to their dissatisfaction, the student's parents commenced an action claiming that the

school district never considered his individual needs, in violation of the IDEA, because the

school district maintained a rigid rule of providing only consultative physical therapy.  *Id.* at 176-

77.  The Third Circuit concluded that "a rigid rule under which defendants refuse even to

consider providing physical therapy . . . would conflict with [the student's] procedural right to an

individualized program."  *Id.* at 177.  The Third Circuit found that a genuine dispute existed over

whether, under any circumstances, the defendants would consider offering direct physical

therapy, thereby precluding summary judgment.  *Id.* at 178.

    *Polk* is distinguishable from this case, given that *Polk* plainly involved the deprivation of

an educational benefit.  In *Polk*, the disabled student's IEP outlined specific goals that, plaintiffs

argued, could be attained only through the type of physical therapy that defendants, as a rule, did

not provide.  The plaintiffs in *Polk* specifically alleged the denial of an educational program in

the form of the defendants' denial of direct physical therapy.  *Id.* at 175.  *Polk*'s holding

conforms with the more recent one in *D.S. v. Bayonne*, which states that "[a] procedural violation

---

[11](...continued)
were subjected to the IDEA-deficient educational placement process year after year.  *Id.* at *11.
Second, the automatic transfer policy in *P.V.* deprived parents of their participation rights.  *Id.* at
*2.  Third, in determining that the *P.V.* plaintiffs did not need to exhaust their administrative
remedies because they were alleging systemic legal deficiencies, the court in *P.V.*, unlike this
Court, had the benefit of an administrative hearing officer's determination that "he had no power
to grant the kind of system-wide relief requested in th[e] suit."  *Id.* at *8.  The *P.V.* court found
that the facts illustrated "the prototypical case in which a court should permit IDEA plaintiffs to
bypass IDEA's administrative dispute resolution process."  *Id.* at *8.

is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives a parent of their participation rights, or causes a deprivation of educational benefits." *D.S.*, 602 F.3d at 565.

In this case, the Plaintiffs allege the existence of a rigid rule, but there is no denial of services, opportunities, participation, or benefits. The IEP team determined that A.T. needed the support of an in-class special education teacher, and Dumont provided one in the inclusion class. No evidence suggests that the placement of A.T., or any other student in the inclusion class, was inappropriate or that the placement decision was made without considering A.T.'s individual needs. In addition, J.T. had discussions with Dumont about A.T.'s IEP prior to the IEP meeting, and during the meeting, J.T. had the opportunity to discuss her concerns. Plaintiffs also explicitly state that "the substantive adequacy of Dumont's kindergarten placement decisions – whether Dumont in fact provided a [FAPE] . . . or provided it in the least restrictive environment . . . as to any specific kindergarten student (even A.T.), is not relevant to this action."[12] (Opp'n to Summ. J. at 1, ECF No. 201.) Indeed, Plaintiffs contend in their motion to strike that "[t]his case is not about individual placements and it never has been." (Mot. to Strike at 3, ECF No. 198-3.)

Given these direct statements by Plaintiffs, the Court cannot identify in the alleged procedural violation an injury-in-fact necessary to sustain Plaintiffs' standing. Undisputedly, Dumont has, through the IEP process, individually determined that certain kindergartners need particular special education services, and provided these services in a classroom with other kindergarteners who need no such services. Plaintiffs may not establish their standing based

---

[12] Plaintiffs concede that "if the allegations in the Amended Complaint are true . . . , some children subject to the policies at issue here have probably been appropriately placed, while others probably have not." (Opp'n to Summ. J. at 6 n.6, ECF No. 201.)

solely on the argument that Dumont committed a procedural violation by failing to consider whether the exact same services should be provided in a child's neighborhood school.  Crucially, Plaintiffs have failed to identify, or they have abandoned, assertions that Dumont's policy resulted in the loss of an educational opportunity, seriously deprived parents of participation rights, or deprived students of educational benefits.  Given that Plaintiffs fail to demonstrate a harm, a ruling as to Dumont's policy would be an advisory opinion, which the doctrine of standing prohibits.  Therefore, the Court concludes that Plaintiffs have failed to establish the concrete and particularized injury necessary for standing and for this Court to review the merits of their claim.  *See Lujan*, 504 U.S. at 578 (explaining that an individual can enforce a violation of procedural rights conferred by statute provided that "the party seeking review . . . himself [has] suffered an injury"); *Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.").

### C.    Failure to Exhaust Administrative Remedies

Defendants also argue that Plaintiffs cannot bring this action alleging that A.T. suffered a denial of a substantive educational benefit because Plaintiffs withdrew the due process petition for A.T. that had been pending before the OAL, and therefore failed to exhaust their administrative remedies.  Judicial review under 20 U.S.C. § 1415(i) is not normally available until a plaintiff has exhausted the administrative remedies available under § 1415(b) and (f).  *See Honig,* 484 U.S. at 326-27; *D.A. v. Pleasantville Sch. Dist.*, 2009 WL 972605, at *5 (issues regarding whether plaintiff was provided a FAPE in least restrictive environment and whether defendants are liable "for any failure in that regard due to inadequate execution of IDEA

23

compliance" are "precisely the kinds of issues the IDEA mandates adjudication of in the first instance at a due process hearing"); *see also Murray v. Montrose Cnty. Sch. Dist.*, 51 F.3d 921, 930 n.14 (10th Cir. 1995) (holding that disputes over types of aids and services that should be provided to a student are "precisely the kind of technical issue[s] on which expert administrative tribunals should rule first"); *Heldman v. Sobol*, 962 F.2d at 159 (noting that exhaustion requirement "prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem . . . "); *Hoeft*, 967 F.2d at 1303 (noting that the exhaustion doctrine generally "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency").

In this case, the Court need not decide whether Plaintiffs have exhausted their administrative remedies before challenging whether A.T.'s IEP provided the least restrictive environment. Although Plaintiffs initially sought to challenge A.T.'s individual placement, their briefing and position at oral argument made it clear that they no longer advance that claim. (Mot. to Strike at 3, ECF No. 198-3 ("This case is not about individual placements and it never has been."); Opp'n to Summ. J. at 5, ECF No. 201 ("Plaintiffs do not complain of or seek a ruling regarding the appropriateness of the placement of any individual student."); *id.* at 7 ("[T]his dispute is not related to whether any particular child (or even any group of children) were denied an appropriate placement."); Tr. of Oral Argument at 20:3-20:6, ECF No. 200-1 (Plaintiffs' counsel confirming that sole grievance was regarding process); *see also* Part III.A. note 6. Because Plaintiffs have now made clear that they do not challenge any individual placement or any denial of an educational benefit, the Court need not address whether Plaintiffs have

24

exhausted their administrative remedies.

However, the Court notes that even if Plaintiffs continued to challenge A.T.'s placement, or otherwise alleged a denial of an educational benefit, their failure to exhaust their administrative remedies under § 1415(b) and (f) would compel dismissal of those claims. Plaintiffs acknowledge that the OAL has the power to determine and grant relief when a school has violated the IDEA's mandate to place students in the least restrictive environment. (*See* Opp'n to Summ. J. at 4-5, ECF No. 201.)  There is no dispute that J.T. filed a due process petition on behalf of A.T., arguing that the proposed placement in the inclusion class at his non-neighborhood school was not the "least restrictive envionment" for him. (Harrison Aff. Ex. 1 at 2, ECF No. 197-4.)  However, J.T. withdrew the petition shortly after filing the complaint in this action. (Harrison Aff. Ex. 8, ECF No. 197-6.)  Where a plaintiff requests a due process proceeding, but unilaterally withdraws her petition before a decision has been reached, she has not exhausted administrative remedies. *See Starkey ex rel. Starkey v. Somers Cent. Sch. Dist.*, 319 F. Supp. 2d 410, 416-17 (S.D.N.Y. 2004).

Plaintiffs concede that they have not exhausted their administrative remedies and, instead, argue that exhaustion should be excused because the relief they seek is not available from the New Jersey Office of Administrative Law ("OAL").  (Pls.' Supplemental Statement of Disputed Material Facts ¶ 12, ECF No. 201-1; Am. Compl. ¶¶ 21-34, ECF No. 36; Opp'n to Summ. J. at 4-10, ECF No. 201.)  Plaintiffs' primary argument is that, because they seek declaratory and injunctive relief affecting Dumont's placement policies, exhaustion would be futile because the OAL cannot grant systemic relief or allow discovery sufficient to show the existence of a

deficient systemic policy.[13]  (Opp'n to Summ. J. at 4, 8, ECF No. 201.)  However, the cases cited

by Plaintiffs address systemic deficiencies of a much broader scope than the instant case.  *See*

*Gaskin v. Pennsylvania*, No. 94-4048, 1995 WL 154801, at *1 (E.D. Pa. Mar. 30, 1995)

(challenge by plaintiffs to "Commonweath of Pennsylvania's system for educating students with

disabilities");  *N.J. Prot. & Advocacy, Inc. v. N.J. Dep't of Educ.*, 563 F. Supp. 2d 474, 486

(D.N.J. 2008) (plaintiffs requested "'relief that requires restructuring, by judicial order, of the

mechanism that the *state* has in place to meet the needs of students with special educational

problems,' because such students are currently not receiving educational instruction in the least

restrictive environment." (emphasis added) (citing *Waters v. S. Bend Cmty. Sch. Corp.*, No. 98-

3365, 1999 WL 528173, at *4 (7th Cir. July 22, 1999)).  By contrast, the claim here is limited to

---

[13] Plaintiffs also argue that, even if the OAL had the power to grant the relief Plaintiffs request, resorting to the administrative process would still be futile because it could not offer a timely decision.  (Opp'n to Summ. J. at 9, ECF No. 201.)  According to Plaintiffs, "[d]espite an express 45-day limit on the time to decision in the OAL, N.J.A.C. 6A:14-2.7(j), claims in the OAL routinely take many months to come to resolution . . . ."  (*Id.*; Wilhelm Aff. ¶ 2, ECF No. 201-6 (stating knowledge from "experience over the last two years litigating special education cases" in the New Jersey OAL "that only actual hearing days are counted against the statutorily mandated 45-day limit for time to final decision"); *see also* Elmore Aff. ¶ 2, Ex. A, ECF No. 201-12) (attesting to facts used to review special education cases in the OAL and compile a statistical analysis of the average number of days to reach a final decision).

However, Plaintiffs fail to present competent evidence supporting the proposition that the OAL could not provide them with an adequate, timely resolution.  The Court has no reason to believe that the attorney in this case, who completed an analysis of unidentified decisions in the OAL and determined that the OAL takes, on average, 190 days to resolve due process petitions, has any expertise whatsoever in statistical methodology.  *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) (trial judge must ensure that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand")*.*  In addition, the evidence proffered to show that the OAL fails to follow the statutory mandate of providing a timely resolution is incomplete and merely makes bald assertions of an administrative process incapable of redressing Plaintiffs' allegations.  The Court will not excuse exhaustion based on the evidence before it.

a small subset of classified students in Dumont, at only one grade level – kindergarten.

The Education Law Center's *amicus curiae* brief supports Plaintiffs' position regarding the futility of exhaustion under the circumstances Plaintiffs allege.  (Br. of ELC in Opp'n to Summ. J. at 11-13, ECF No. 208-2.) The *amicus* brief argues that requiring exhaustion would allow Dumont's policy to escape meaningful review.  (*Id.* at 13-14.)

Defendants argue that the OAL could have given J.T. the specific placement she sought for A.T. because the OAL is empowered to order the provision of an appropriate educational program for any individual child.  *See Lester H. v. Gilhool*, 916 F. 2d 865, 870 (3d Cir. 1990) (noting that "[t]he administrative hearing is to receive evidence bearing on whether a particular placement is appropriate or not.").  Defendants also contend that Plaintiffs characterize Dumont's placement decision as the product of an illegal policy, i.e. as a "systemic" problem, solely to circumvent the administrative process.  The Court agrees.

The Supreme Court has affirmed the importance of administrative exhaustion on the basis that "[c]ourts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy."  *Rowley*, 458 U.S. at 208.  For that reason, failure to exhaust is excused only under specific circumstances.  The Third Circuit has stated that IDEA claimants may bypass the administrative process "(1) where exhaustion would be futile or inadequate; (2) where the issue presented is purely a legal question; (3) where the administrative agency cannot grant relief; and (4) when exhaustion would work severe or irreparable harm upon a litigant."  *Beth V.*, 87 F.3d at 88-89 (quotations and citations omitted).

The present case is best analyzed as a substantive challenge to a single component of Dumont's educational program.  *See Ass'n for Cmty. Living in Colorado v. Romer*, 992 F.2d

1040, 1044 (10th Cir. 1993); *Doe v. Arizona Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997);

and *Hoeft*, 967 F.2d at 1305.  "[A] claim is 'systemic' if it implicates the integrity or reliability of

the IDEA dispute resolution procedures themselves, or requires restructuring the education

system itself in order to comply with the dictates of the Act."  *Doe*, 111 F.3d at 682.  However,

"it is not 'systemic' if it involves only a substantive claim having to do with limited components

of a program, and if the administrative process is capable of correcting the problem."  *Doe*, 111

F.3d at 682.  Further, a plaintiff cannot avoid the exhaustion requirement "[s]imply by styling a

case as a putative class action" challenging an allegedly unlawful school policy and seeking

injunctive relief.  *Mrs. M. v. Bridgeport Bd. of Educ.*, 96 F. Supp. 2d 124, 135 (D. Conn. 2000)*;

see also Grieco v. N.J. Dep't of Educ.*, No. 06-cv-4077, 2007 WL 1876498, at *9 (D.N.J. June

27, 2007) (agreeing that "framing a complaint as a class action challenge to a general policy does

not automatically convert the case into the kind of systemic violation that renders the exhaustion

requirement inadequate or futile").

   For example, in *Hoeft*, the plaintiffs alleged a systemic problem with the school's

extended school year ("ESY") services offered under their special education program.  *Hoeft*, 967

F.2d at 1309.  The Ninth Circuit held that IDEA's basic goals were not threatened on a system-

wide basis because plaintiffs' complaint focused on "the shortcomings of a particular component

of Tucson Unified's special education program – extended school year services."  *Id.* at 1305.

The court found that "the alleged violations [did] not rise to a truly systemic level in the sense

that the IDEA's basic goals [were] threatened on a system-wide basis."  *Id.*  The court added that

the plaintiffs' failure to pursue administrative remedies was "entirely voluntary" and not due to

the school's allegedly inadequate parental notification policy.  *Id.*

28

Here, Plaintiffs contend neither that Dumont fails to develop IEPs for kindergarten students, nor that Dumont fails to involve parents in the IEP development process. Dumont is not being accused of failing to individually evaluate students to determine whether they can thrive in a class with students who do not require special education, or of failing to provide sufficient physical access and special education support services to the kindergarteners in the inclusion class.

Plaintiffs' Amended Complaint challenges only Dumont's placement of these kindergarteners with disabilities in the inclusion class. During the 2008-2009 school year, the inclusion class had four special education kindergarteners out of a total of sixteen kindergarteners. (Rue Letter Ex. B, Barbato Dep. at 210:5-211:7, 176:8-177:3, 178:3-13). During the 2009-2010 school year, the ratio was four out of a total of seventeen. (*Id.*) Thus, between 23.5% and 25% of the inclusion class had kindergartners with special needs. Importantly, Plaintiffs state that approximately 20% of children residing in Dumont were classified as requiring special education services during the 2008-2009 school year. (Am. Compl. ¶ 38, ECF No. 36.) Plaintiffs argue that, during each year, up to four placements were improper because (1) some of the placements were not in the child's neighborhood school, and (2) the inclusion class had a higher special education population (23.5% or 25%) than Dumont's natural population (20%).

On the record before it, the Court cannot find that the issues raised by Plaintiffs are "systemic" or that Plaintiffs should be excused from raising their claims in the OAL in the first instance. Plaintiffs challenge only the placements of children assigned to the inclusion class, and challenge only the specific location of their placement and the class composition ratio differential

29

of 3.5 to 5%.  Each year, only four placements (at most) appear to be involved.  Plaintiffs claims

do "not rise to a truly systemic level in the sense that the IDEA's basic goals are threatened on a

system-wide basis." *Doe*, 111 F.3d at 682 (quoting *Hoeft*, 967 F.2d at 1305).  The evidence does

not support Plaintiffs' claim that Dumont used the inclusion class to systematically avoid the

IDEA's requirement to individually consider students' needs when making placement decisions.

Even if A.T. suffered a legally cognizable injury from Dumont's alleged failure to place him in

the least restrictive environment, Plaintiffs can (and must) seek redress on this substantive claim

through the administrative process.  Likewise, redress is available through the administrative

process to any of the other kindergarteners affected.  "Structuring a complaint as a challenge to

policies, rather than as a challenge to an individualized education program formulated pursuant

to th[o]se policies . . . does not suffice to establish entitlement to a waiver of the IDEA's

exhaustion requirement." *Hoeft*, 967 F.2d at 1304.  Therefore, the Court cannot find that

Plaintiffs present a systemic challenge sufficient to excuse exhaustion.  Thus, this Court lacks

jurisdiction to hear Plaintiffs' claims.

### D.      Plaintiffs' Remaining Claims

The Amended Complaint includes claims under Section 504 of the Rehabilitation Act and

the NJLAD.

### i. Section 504 of the Rehabilitation Act

Section 504 of the Rehabilitation Act prohibits discrimination on the basis of a handicap

in programs receiving federal financial assistance.  *Jeremy H. v. Mount Lebanon Sch. Dist.*, 95

F.3d 272, 278 (3d Cir. 1996).  Section 504 provides in relevant part:

[N]o otherwise qualified individual with a disability in the United States . . . shall,

solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency. . . .

29 U.S.C. § 794(a).

The IDEA does not limit the rights or remedies available under other federal laws protecting the rights of children with disabilities, "except that, before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter."  20 U.S.C. § 1415(l).  "This provision bars plaintiffs from circumventing IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute," including section 504 of the Rehabilitation Act.  *Jeremy H.*, 95 F.3d at 281.

To establish standing to bring a claim under the Rehabilitation Act in federal court, the plaintiff must satisfy three elements: "(1) injury in fact, (2) causation, and (3) redressability."[14]

---

[14] Plaintiffs contend that Defendants did not move for summary judgment as to these claims, and therefore have waived the right to seek their dismissal.  The Court need not consider whether Defendants intended that their standing argument include all claims or only the IDEA claims.  Standing is not waived even if a party does not specifically challenge it.  *United States v. Hays,* 515 U.S. 737, 742 (1995) ("[W]e are required to address the issue even if the courts below have not passed on it, and even if the parties fail to raise the issue before us. The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'") (quoting *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 230-231 (1990) (alteration in *Hays*)).

Plaintiffs also note in their opposition brief that they "have given these issues, not raised by Dumont, summary treatment here."  (Opp'n at 16 n.17, ECF No. 201.)  They also requested leave to provide additional briefing, "in the event the Court [decides] *sua sponte* to consider these issues in more depth."  *Id.*  Based on the record, including the extensive briefing and oral argument, *see supra* Part I. note 1, the Court determines that additional briefing is unnecessary to

(continued...)

31

*See D.L. v. Unified Sch. Dist. No. 497*, 596 F.3d 768, 774 (10th Cir. 2010) (citation omitted).  For the same reasons Plaintiffs have failed to show that they suffered an injury under the IDEA, Plaintiffs have failed to establish that J.T. has been discriminated against due to his disability.  Thus, Plaintiffs lack standing to bring a claim under the Rehabilitation Act.

Even if Plaintiffs alleged that A.T. suffered an injury in fact, which they clearly have disavowed, *see supra* Part III.A. note 6*,* their Rehabilitation Act claim would fail because Plaintiffs failed to exhaust their administrative remedies.  Plaintiffs' Rehabilitation Act claim is based on the same conduct as their IDEA claim.  (Am. Compl. ¶ 51(a)-(i), ECF No. 36.)  Therefore, Section 1415(1) requires Plaintiffs to exhaust their administrative remedies before seeking relief in this Court.  Because Plaintiffs have failed to do so, their claim under the Rehabilitation Act must be dismissed.

### ii. NJLAD

Plaintiffs also bring a claim under NJLAD.  Plaintiffs argue that even if the federal claims are dismissed, the NJLAD claim survives because "NJLAD does not require a plaintiff to exhaust any administrative remedies before commencing an action."  (Opp'n to Summ. J. at 17, ECF No. 201.)

Plaintiffs are correct that the NJLAD claim, unlike the IDEA and Rehabilitation Act claims, does not require exhaustion of administrative remedies.  However, the Court must decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367.  Having dismissed Plaintiffs' federal claims for lack of standing, and therefore for lack of subject matter

---

[14](...continued)
rule on these issues.

jurisdiction, the Court cannot exercise supplemental jurisdiction under § 1367(a) over the NJLAD claim. *Storino v. Borough of Point Pleasant,* 322 F.3d 293, (3d Cir. 2003) (holding that where plaintiffs "lack[ed] standing to bring their federal claim" the district court lacked original jurisdiction and "it therefore could not exercise supplemental jurisdiction" over state law claims) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 727 (1966) ("'The federal claim must have substance sufficient to confer subject matter jurisdiction on the court' in order for the court to exercise supplemental jurisdiction.")); *see also Herman Family Revocable Trust v. Teddy Bear,* 254 F.3d 802, 805 (9th Cir. 2001) (holding that plain language of § 1367(a) "makes clear that supplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it."); *Textile Productions, Inc. v. Mead Corp.,* 134 F.3d 1481, 1486 (Fed. Cir. 1998) (holding that after district court dismissed plaintiff's patent-infringement claim for lack of standing, district court "should have dismissed the contract claim without prejudice for lack of subject matter jurisdiction.").

Accordingly, the Court lacks jurisdiction to consider Plaintiffs' NJLAD claim, and will dismiss that claim without prejudice.

## VI.  <u>CONCLUSION</u>

For the reasons set forth above, the Court will grant Defendants' motion for summary judgment on the IDEA and Rehabilitation Act claims, dismiss Plaintiffs' NJLAD claim without prejudice for lack of subject matter jurisdiction, and deny Plaintiffs' motions to strike certain defenses and for partial judgment on the pleadings.

An appropriate form of Order accompanies this Opinion.

s/ Michael A. Hammer
UNITED STATES MAGISTRATE JUDGE

Date:   March 28, 2012